OPINION
{¶ 1} Defendant-appellant, Patrick Paluga, appeals his convictions in Butler County Common Pleas Court for importuning and sexual imposition. We affirm appellant's convictions.
 {¶ 2} On June 17, 2001, K.W., the 15-year-old victim in this case, was baby-sitting at the home of her sister, Lori, in Middletown, Ohio. During the evening, appellant, a friend of K.W.'s brother-in-law Timothy, called to speak with Timothy. K.W. told appellant that she expected Lori and Timothy to return within the next few hours. Appellant indicated to K.W. that he would be traveling from his home in Adams County to visit Timothy.
 {¶ 3} Appellant arrived at Lori and Timothy's home approximately two hours later. Lori and Timothy had not yet returned, but K.W. invited appellant into the house and together, they watched television in the second floor bedroom. At some time after his arrival, appellant prepared himself a large glass of Jim Beam and Coke. After Lori and Timothy returned to their home, appellant asked Timothy if he could spend the night because he was on his way to Michigan and did not feel he should drive after consuming alcohol. Timothy agreed and told him that he could sleep on the couch in the first floor living room. Lori and Timothy then went to bed in their second floor bedroom. K.W. set up a mattress to sleep on, which was located on the second floor landing. Her 12-year-old cousin Joe set up bedding next to her.
 {¶ 4} While K.W. and Joe were trying to sleep, both noticed that appellant walked from the first floor to the top of the stairs several times, at least once entering the second floor bathroom. On one of these trips, appellant laid on K.W.'s mattress, and told her that he wanted to "lick her from her belly down to her butt hole," and that he wanted to "give it to [her] hard." As he was making these statements, appellant placed his hand on K.W.'s inner thigh. After several minutes, K.W. got up, and appellant asked, "Does that mean we're gonna [sic] do it?" K.W. replied that it did not, and that she was going to get Timothy. K.W. then banged on Timothy and Lori's bedroom door, yelling that she needed Timothy's help.
 {¶ 5} In the meantime, appellant walked downstairs and went out the front door. After K.W. told Timothy what had happened, Timothy went downstairs to speak with appellant. Timothy found appellant outside, and before Timothy said anything, appellant began apologizing for his actions. Appellant explained that he was "not in his right state of mind," and that he would never do something like that because he had young children himself. When appellant refused to leave the house, Timothy called the police.
 {¶ 6} In August 2001, appellant was indicted on one count of importuning in violation of R.C. 2907.07(C), and one count of sexual imposition in violation of R.C. 2907.06(A). A trial was held in December 2001. At the conclusion of the state's evidence, appellant moved the court for a judgment of acquittal pursuant to Crim.R. 29. The trial court overruled appellant's motion, and a jury found appellant guilty of both charges. Appellant now appeals his convictions, raising two assignments of error.
Assignment of Error No. 1
 "THE EVIDENCE PRESENTED WAS INSUFFICIENT/THE CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 7} In his first assignment of error, appellant argues that the state failed to present sufficient evidence to convict appellant of either sexual imposition or importuning. In regard to his sexual imposition conviction, appellant claims that the state failed to present any evidence corroborating the victim's testimony, or prove that there was sexual contact between appellant and K.W.
 {¶ 8} In reviewing the sufficiency of the evidence supporting a criminal conviction, the function of an appellate court is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
 {¶ 9} Appellant was convicted of sexual imposition in violation of R.C. 2907.06, which provides:
 {¶ 10} "(A) No person shall have sexual contact with another, not the spouse of the offender; cause another, not the spouse of the offender, to have sexual contact with the offender; or cause two or more other persons to have sexual contact when any of the following applies: * * *
 {¶ 11} "(4) The other person, or one of the other persons, is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of such person, and the offender is at least eighteen years of age and four or more years older than such other person. * * *
 {¶ 12} "(B) No person shall be convicted of a violation of this section solely upon the victim's testimony unsupported by other evidence."
 {¶ 13} We first address appellant's corroboration argument. InState v. Economo, 76 Ohio St.3d 56, 58, 1996-Ohio-426, the Ohio Supreme Court determined the type of evidence that satisfies the corroboration requirement of R.C. 2907.06(B). The court held that the corroboration requirement "does not mandate proof of the facts which are the very substance of the crime charged." Id. at 59-60. Further, the court found that the corroborating evidence necessary to satisfy R.C. 2907.06(B) need not be independently sufficient to convict the accused, and it need not go to every essential element of the crime charged. Id. at 60. Slight circumstances or evidence that tends to support the victim's testimony is satisfactory. Id. at 60. Corroborating evidence is not an element of the offense of sexual imposition, but merely is an ancillary evidential requirement. Id. at 60-62.
 {¶ 14} In this case, we find substantial and credible evidence that supports K.W.'s testimony. K.W. testified that a few minutes after appellant stated to her that he wanted to "give it to [her] hard," K.W. got up and knocked on Timothy's door. Timothy testified that he awoke to someone "frantically beating on [his] bedroom door" and that K.W. yelled to him that she needed his help. When Timothy opened the door, K.W. explained to him what had happened. Timothy then went to look for appellant, finding him standing in the yard outside the house. When appellant saw Timothy, appellant immediately began apologizing, before Timothy could say anything to him.
 {¶ 15} The testimony of K.W.'s cousin, Joe, also corroborated K.W.'s testimony. On the night the incident occurred, Joe was sleeping next to K.W.'s mattress. K.W. testified that appellant walked upstairs several times before he got on the mattress next to her. Joe also testified that appellant "kept on coming up and down [the stairs]." Joe testified that right before he fell asleep, appellant came over and laid beside K.W.
 {¶ 16} Further, on the night the incident occurred, appellant admitted to being in the same house as K.W., and that he had consumed enough alcohol to prevent him from being able to drive. Appellant testified that he made several trips up and down the stairs in order to use the second-floor bathroom, and, on one of these occasions, he ended up on the mattress with K.W. While appellant denies saying anything to K.W. or touching her while he was on the mattress, some of his testimony tends to support K.W.'s testimony.
 {¶ 17} Based on the standard set forth in Economo, we find that the testimony of Timothy, Joe, and appellant supports K.W.'s testimony and is sufficient to meet the corroboration requirement of R.C. 2907.06(B).
 {¶ 18} We now address appellant's argument that the state failed to prove sexual contact between himself and K.W. Appellant bases this claim on his testimony that he did not touch K.W.'s thigh, and that even if the touching did occur, it was not for sexual gratification, as required by R.C. 2907.01(B).
 {¶ 19} In making a determination as to sexual gratification, the trier of fact may infer from the evidence presented at trial whether the purpose of the defendant was sexual arousal or gratification by his contact with areas of the body described in R.C. 2907.01(B). State v.Cobb (1991), 81 Ohio App.3d 179, 185. Sexual contact is defined in R.C.2907.01(B) as the "touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person." In making a decision as to sexual gratification, "the trier of fact may consider the type, nature and circumstances of the contact, along with the personality of the defendant." Cobb at 185.
 {¶ 20} In this case, K.W. testified that appellant laid next to her and whispered into her ear that he wanted to "lick [her] from her belly down to [her] butt hole," and that he was going to "give it to [her] hard." K.W. also testified that as appellant was saying these things, he placed his hand on her inner thigh. K.W. stated that when she stood up, appellant said to her: "[D]oes that mean we're gonna [sic] do it?" We find that it was reasonable for the jury to infer from this testimony that appellant's purpose in placing his hand on K.W.'s inner thigh was sexual gratification. The fact that this incident occurred at night on a mattress where K.W. was trying to sleep, along with the nature of appellant's statements and his touching of an erogenous zone specifically defined in R.C. 2907.01(B), there is ample evidence that appellant's actions were for purposes of sexual gratification.
 {¶ 21} Based on the evidence presented by the state at trial, a rational trier of fact could have found that appellant had sexual contact with the victim. Additionally, the corroboration requirement of R.C.2907.06(B) was satisfied because the victim's testimony was corroborated by the testimony of Timothy, Joe, and appellant. Therefore, we reject appellant's argument that there was insufficient evidence to support his conviction for sexual imposition.
 {¶ 22} We now address appellant's argument that the state failed to present sufficient evidence that appellant committed the offense of importuning under R.C. 2907.07(C). Under R.C. 2907.07,
 {¶ 23} "(C) No person shall solicit another, not the spouse of the offender, to engage in sexual conduct with the offender, when the offender is eighteen years of age or older, and four or more years older than the other person, and the other person is thirteen years of age or older but less than sixteen years of age, whether or not the offender knows the age of the other person.
 {¶ 24} "`Sexual conduct' is defined in R.C. 2907.01(A) as `vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex[.]'"
 {¶ 25} For an appellate court to overturn a conviction for importuning, the evidence must be such that no rational trier of fact could find that the elements of the offense have been proven beyond a reasonable doubt. Jenks, 61 Ohio St.3d at paragraph two of the syllabus. We do not agree with appellant's claim that the state failed to prove that appellant solicited or requested sexual conduct. It is reasonable for a trier of fact to find that appellant's statement that he wanted to "lick [her] from her belly down to [her] butt hole" was a request for K.W. to allow appellant to perform cunnilingus, which is expressly stated in R.C. 2907.01(A) as a form of sexual conduct. In addition, a trier of fact could reasonably find that appellant was requesting to engage in sexual conduct with K.W. when he stated that he would "give it to [her] hard," followed by the question, "Does that mean we're gonna [sic] do it?"
 {¶ 26} We now address appellant's argument that the jury's decision to find him guilty of sexual imposition and importuning was against the manifest weight of the evidence. For an appellate court to reverse a conviction on the basis that the verdict is against the manifest weight of the evidence, the court must unanimously disagree with the jury's resolution of any conflicting evidence. State v. Thompkins,78 Ohio St.3d 380, 389, 1997-Ohio-52. Specifically, to determine if a conviction is against the manifest weight of the evidence, an appellate court is to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice. Statev. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 27} An appellate court should vacate a conviction and grant a new trial only when the evidence weighs strongly against the conviction. Id. In addition, the reviewing court must be aware that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given to the evidence presented. See Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus; Statev. Stair, Warren App. No. CA2001-03-017, 2002-Ohio-18.
 {¶ 28} The basis for appellant's argument is that the jury acted irrationally in choosing to give more weight to K.W.'s testimony, rather than choosing to believe his testimony. Appellant cites portions of K.W.'s testimony that he claims are either illogical or inconsistent. We disagree and find nothing in the record to show that K.W.'s testimony is so illogical or inconsistent that the jury lost its way and created a manifest miscarriage of justice in believing her testimony rather than appellant's testimony. The jury, in observing the testimony of K.W. and appellant, was in the best position to judge their credibility. SeeDeHass at paragraph one of the syllabus. Upon reviewing the record, we conclude that the jury's verdict on both charges was not against the manifest weight of the evidence.
 {¶ 29} Because we find that that a rational trier of fact could have found appellant guilty of the offenses of sexual imposition under R.C. 2907.06(A)(4) and importuning under R.C. 2907.07(C), we reject appellant's sufficiency of the evidence argument. Further, we find that the manifest weight of the evidence supports appellant's conviction. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. 2
"THE STATE COMMITTED MISCONDUCT DURING CLOSING ARGUMENT."
 {¶ 30} In appellant's second assignment of error, he argues that his conviction should be reversed because the state committed misconduct during its closing argument. Specifically, appellant claims that the state made statements to the jury alluding to facts not in evidence. Appellant argues that this conduct violated his right to a fair and impartial trial.
 {¶ 31} The test for prosecutorial misconduct is whether the statements made by the state were improper, and if so, whether they prejudicially affected substantial rights of the accused. State v. Smith
(1984), 14 Ohio St.3d 13, 14. In making closing arguments, both the prosecution and defense have considerable latitude "as to what the evidence has shown, and what reasonable inferences may be drawn therefrom." State v. Lott (1990), 51 Ohio St.3d 160, 165. An appellate court must review the entire closing argument to determine if a prosecutor's remarks are prejudicial to the accused. State v. Tumbleson
(1995), 105 Ohio App.3d 693, 699. However, even if a prosecutor's statements during closing arguments are improper, an appellate court should only reverse a conviction on those grounds if it "permeates the entire atmosphere of the trial." Id.
 {¶ 32} First, we note that appellant did not object to any of the state's alleged improper statements, thus waving all but plain error under Crim.R. 52(B). See State v. Hanna, 95 Ohio St.3d 285, 298-299,2002-Ohio-2221. Plain error exists only where the outcome of the trial would have been different had the error not occurred. Jenks,61 Ohio St.3d at 282. A finding of plain error is only for exceptional circumstances where it is necessary to prevent a manifest miscarriage of justice. Id.
 {¶ 33} Appellant cites several statements the state made during closing arguments as being improper. Specifically, the state made comments regarding K.W.'s reasons for remaining still for several minutes before getting up to get her brother-in-law. In addition, the state alluded to appellant's reasons for whispering his statements to K.W.
 {¶ 34} After a review of the record, we find no plain error. The state's comments regarding why K.W. laid still were reasonable inferences supported by her testimony about her inability to move once appellant was on the mattress. Also, considering the nature of appellant's statements and the number of people who were in the house at the time, along with the fact that Joe was sleeping a few feet away from K.W.'s mattress, it is a reasonable inference that appellant whispered or spoke quietly to K.W. More importantly, appellant has failed to show that but for the state's comments, the jury would not have found him guilty of the offenses of sexual imposition and importuning. For these reasons, appellant's second assignment of error is overruled.
 {¶ 35} Because we find that the state presented sufficient evidence to convict appellant of sexual imposition under R.C. 2907.06(A)(4) and importuning under R.C. 2907.07(C), that the manifest weight of the evidence supported those convictions, and that the state committed no misconduct during its closing argument, we affirm appellant's convictions.
Judgment affirmed.
YOUNG and VALEN, JJ., concur.